IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

TIGIST RYALS                          §
                                      §
VS.                                   § CIVIL ACTION NO. 4:08-CV-460-Y
                                      §
AMERICAN AIRLINES, INC.               §

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S
<u>MOTION TO STRIKE IN PART, AND DENYING PLAINTIFF'S MOTION TO STRIKE</u>

Before the Court is a motion for summary judgment (doc. 24) and a motion to strike (doc. #38), each filed by American Airlines, Inc. ("AA"). Also before the Court is a motion to strike (doc. 40) filed by plaintiff Tigist Ryals ("Ryals"). After review, the Court will grant AA's motion for summary judgment, grant AA's motion to strike in part, and deny Ryals's motion to strike.


I.  Background

In reviewing a motion for summary judgment, a court's job is to determine whether there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A court views the evidence in the light most favorable to the non-moving party and, in ruling on the motion, must refrain from weighing the evidence, instead determining only whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990). This Court's effort to perform these tasks and, indeed, to construct a basic background

of this case, is made substantially more difficult by the nature of the briefing on AA's summary-judgment motion.

After Ryals filed her response, AA filed its Objections to Plaintiff's Summary-Judgment Evidence and Motion to Strike (doc. 38). In that motion, AA argues that Ryals's entire summary-judgment appendix should be ordered stricken because Ryals does not adequately specify in her motion which portions of the appendix support her claims. *Cf. Sceptic v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)(noting a court is not obligated to sift through a litigant's summary-judgment evidence to find evidence in support of the litigant's claims). Under Fifth Circuit precedent, a litigant is "required to identify specific evidence" in support of its summary-judgment arguments and provide proper citations to direct the court to that evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). Pursuant to the local rules, a supporting appendix is to be a self-contained document, separate from the related brief, with each page sequentially numbered in the lower right hand corner. *See* N.D. Tex. Loc. R. Civ. P. 7.1(I). Citations to the appendix are to be to the sequential page numbers. *See* N.D. Tex. Loc. R. Civ. P. 7.2(e). Ryals's response brief often cites to entire exhibits, rather than specifying which page of the appendix or exhibit is relevant, and her appendix is not sequentially numbered. In fact, the exhibits making up the appendix are not marked, making it almost impossible

for the Court to find the evidence referred to in Ryals's response brief.

AA also recites a litany of more specific objections, arguing that portions of Ryals's appendix consist of unauthenticated documents, hearsay, and statements made without personal knowledge. Ryals has responded to the merit of AA's objections, but also acknowledges some of the shortcomings in her supporting evidence. In her response to the motion to strike, Ryals's counsel states that she was dealing with the death of her husband at the time the summary-judgment response was being drafted and that this affected her concentration, which in turn led to non-compliance with the local rules. The response also concedes that some of the documents in the response appendix are not properly authenticated and that some of the evidence in the appendix is hearsay if offered for the truth of the matter asserted. Ryals's counsel attempts to address some of the authentication issues with a late-filed declaration attesting to the authenticity and accuracy of her documentary evidence. AA has objected to this effort. Ryals has filed her own objections and motion to strike AA's summary-judgment evidence. In light of these circumstances, and rather than rule on all of the numerous objections raised by each side merely to establish the body of evidence that may be considered and to construct a factual statement of the case, the Court will provide only a general background statement and rule on the objections as the factual

issues prove material under substantive law.

II.  Facts

Ryals is a black, Ethiopian-born woman who has worked for AA since 1995.  Currently, Ryals works for AA as an Aviation Maintenance Technician ("AMT") at its Alliance Fort Worth Base ("AFW").  Ryals claims that she has been subjected to less favorable working conditions than her co-workers, particularly by her crew chief Tommy Toon ("Toon").  Ryals insists that Toon has assigned her to work on projects alone, despite the usual practice of having AMTs work on projects in teams of two or more.  This practice of assigning Ryals to work alone has, according to Ryals, caused secondary effects on her work environment and has led to further unfavorable treatment.  Ryals asserts that she has been isolated from her co-workers, that Toon and others refuse to work with her, and that this has prevented her from learning from more experienced AMTs.  Working alone has also hindered Ryals's ability to promptly complete assignments.  And, when she does not timely complete an assignment, Ryals says she is chastised and berated, although other AMTs are not similarly castigated.  Ryals further claims that if she has not completed a project when her shift ends, she is not allowed to turn the project over to the AMTs on the next shift, but is instead "pressured" by Toon to complete the work herself.  Working alone has made her work more dangerous as well, Ryals insists.  In her deposition, Ryals describes an incident in which she was

required to use a "roto-peen" machine alone. Ryals's hair became tangled in the machine and some was pulled out.

Ryals also contends that she has been denied the opportunity to work in AA's avionics department. To work in the avionics department, an AMT must complete special training and pass a test. Ryals claims that the necessary training can be achieved through experience in the "labor-loan program," in which non-avionics AMTs are loaned to the avionics department by their usual department in order to get some avionics experience. Ryals asserts that Toon and others at AA have denied her the opportunity to participate in the labor-loan program.

Finally, Ryals insists that she has been the target of ridicule, threats and intimidation, most prominently by Toon. Toon assigns her to demeaning "woman's work," such as cleaning. And AA employees allegedly do this, at least in part, in retaliation for Ryals's having reported the discrimination she has allegedly suffered to AA's human-resources department. Despite her having made AA aware of the discrimination and harassment by making multiple reports, Ryals claims that AA has not taken sufficient remedial action.

Based on the foregoing, Ryals filed complaints with the Texas Workforce Commission and the Equal Employment Opportunity Commission ("EEOC"). After exhausting her administrative remedies, Ryals filed suit in this Court making claims under 42 U.S.C. § 2000e ("Title

VII") and 42 U.S.C. § 1981. Ryals claims that she was subjected to discrimination due to her race, her gender, and her national origin. Each of these forms of discrimination was manifested, according to Ryals, by her disparate treatment in relation to her coworkers and the hostile work environment she was subjected to. Ryals also claims that she was retaliated against, claiming that the retaliation came in the form of disparate treatment and a hostile work environment.

III. Discussion

A. Summary-Judgment Standards

When the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is appropriate. FED. R. CIV. P. 56(c)(2). An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo County.*, 246 F.3d 481, 489 (5th Cir. 2001). Facts are considered "material" if they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990). Next, the Court must review the evidence on those issues,

viewing the facts in the light most favorable to the nonmoving party. *Id.; Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990).

In making its determination on the motion, the Court must look at the full record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Sceptic*, 953 F.2d at 915-16 & n.7. Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth*, 19 F.3d at 1537. Further, the court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

To prevail on a summary-judgment motion, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party bears the burden of proof on the claim for which it is moving for summary judgment, it must produce evidence establishing "beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot*

*v. Upjohn Co.*, 780 F.2d 1190,1194 (5th Cir. 1986). A movant's showing must be such that the court can conclude that no reasonable trier of fact could find other than for the movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

When the movant has carried its summary-judgment burden, the respondent must go beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial. *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222 (5th Cir. 2004) (citing *Celotex*, 477 U.S. at 324); *see also* FED. R. CIV. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

B. Analysis

1. Statute of Limitations

a. Title VII

AA first argues that Ryals's Title VII claims are barred by limitations.

A Title VII plaintiff must file a charge of discrimination with the EEOC within 180 days "after the

alleged unlawful employment practice occurred." However,
if the plaintiff has "instituted proceedings with a State
or local agency with authority to grant or seek relief
from such practice," the limitations period for filing a
charge with the EEOC extends to 300 days.

*Webb v. Cardiothoracic Surgery Assocs., P.A.*, 139 F.3d 532, 537 (5th
Cir. 1998) (quoting 42 U.S.C. § 2000e-5(e)(1)) (citations omitted).
Ryals filed a claim with the Texas Workforce Commission, which has
authority to grant relief from discriminatory employment practices,
on March 27, 2007. (Mot. App. at 147.) Thus, Ryals had 300 days
from the date of the alleged unlawful employment practice to file
a charge with the Equal Employment Opportunity Commission ("EEOC").
*Webb*, 139 F.3d at 537.

Ryals filed her complaint with the EEOC on the same day she
filed her complaint with the Texas Workforce Commission, March 27,
2007. Consequently, absent some exception to the 300-day
limitations period, Ryals may seek to recover under Title VII only
for conduct that occurred after May 31, 2006.

Ryals argues that her hostile-work-environment claim "is
comprised of a series of separate acts that collectively constitute
one 'unlawful employment practice'" rather multiple discrete
violations. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th
Cir. 2009). This type of hostile-work-environment claim invokes
what is known as the "continuing-violations doctrine," which works
as an exception to Title VII's limitations period. *See id.*

But the continuing-violations doctrine, which applies only in

"exceptional circumstances," *see Webb*, 139 F.3d at 537, is limited in three ways. "First, the plaintiff must demonstrate that the 'separate acts' are related, or else there is no single violation that encompasses the earlier acts." *Stewart*, 586 F.3d at 328 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118, 120 (2002)). That is, a plaintiff must show "an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence that gives rise to the cause of action." *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998). Second, the violation must be, in fact, continuing. *Stewart*, 586 F.3d at 328. "[I]ntervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window." *Id*.

Finally, "the continuing-violation doctrine is tempered by the court's equitable powers, which must be exercised to 'honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.'" *Id.* at 328 (quoting *Morgan*, 536 U.S. at 120). "Employers as well as employees are entitled to procedural safeguards in the precincts patrolled by Title VII." *Jensen v. Frank*, 912 F.2d 517, 522 (1st Cir. 1990) (discussing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984)). "[T]he core idea [of the continuing-violation doctrine] is that equitable

considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated." *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560-61 (5th Cir. 1985) (citations omitted). Conversely, once a plaintiff knows or with the exercise of reasonable diligence would have known of the discrimination, she must promptly file a complaint or lose her claim. *See Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 532 (S.D. Tex. 1999) (citing *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279 (7th Cir. 1993). "The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights." *Glass*, 77 F.2d at 1561.

In her deposition, Ryals testified that she began experiencing discrimination at AA in 1996. (Mot. App. at 14.) AA has produced Ryals's complaint filed with the Texas Workforce Commission and the EEOC, however, in which she states that she was subject to discrimination as early as March 2005. (*Id.* at 146.) Ryals's statement in support of the complaint discusses a number of events that she claims demonstrate that she was subject to discrimination, harassment, and a hostile work environment. (*Id.* at 148-53.) AA has produced documents related to Ryals's complaints and grievances made to AA's human-resources department, as well as an accident report related to the injury Ryals suffered while using the roto-peen machine, in which Ryals complains of incidents in January 2004,

March 2005, and April 2006. (*Id*. at 164, 170, 172, 202.) Thus, AA has produced evidence that, if uncontradicted, establishes beyond peradventure that Ryals was aware of the alleged discrimination and harassment before May 31, 2006, which, in turn, establishes AA's limitations defense. Consequently, Ryals has the burden to produce evidence creating a fact issue on whether there was a continuing violation that encompasses the incidents prior to May 31, 2006, both in response to AA's evidence supporting its limitations defense and as an aspect of her hostile-work-environment claim. *See Stewart*, 586 F.3d at 328 (discussing the continuing-violation doctrine as an aspect of a hostile-work-environment claim on which the plaintiff has the burden); *see also Martin v. Alamo Cmty. College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (observing that the defendant generally bears the burden of proof on affirmative defenses such as the statute of limitations); *Arbaugh*, 380 F.3d at 222 ((citing *Celotex*, 477 U.S. at 324) (discussing summary-judgment practice); *see also* Fed. R. Civ. P. 56(e) (same).

Ryals has, however, failed to produce such evidence. It is Ryals's duty to "identify the specific portions of" her summary-evidence "and to articulate the 'precise manner' in which that evidence" creates a genuine issue of fact on AA's limitations defense and her ability to recover on her hostile-work-environment claim under a continuing-violation theory. *Forsyth*, 19 F.3d at 1537 (quoting *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)).

In her response, Ryals states that "[t]he acts are related and continuing because . . . she was systematically segregated from her white, male coworkers . . . endured daily threats, both direct and indirect, to her safety and well-being[,] repeatedly has been assigned to do jobs alone . . . [,] was purposefully assigned tasks that could not be completed by one person in one shift[,] was repeatedly and unjustifiably singled out for blame[, and was] deprive[d] of the same learning experience[s] that her white, male [coworkers] enjoyed." (Resp. Br. at 25-26.) Ryals further insists that her coworkers refused or avoided working with her, and that she was subjected to "virtually constant" mockery and ridicule. (*Id.* at 26.) But Ryals does not cite a single piece of evidence to support these conclusory and largely legalistic claims. Nor does she provide any legal analysis of whether these claims, even taken as true, would be sufficient to show a continuing violation. Specifically, she does not explain how these contentions show that the events prior to May 31, 2006, are related to those occurring after this date.

Instead, Ryals refers to the factual statement made at the beginning of her brief, making the blanket assertion that her claims are supported by that factual statement. That factual statement is nineteen-pages long and replete with deficient citations to a large appendix that does not comply with the local rules and in which exhibits are not identified. "A litigant's failure to provide legal

or factual analysis results in waiver" of the related claim or argument. *N.W. Enters. v. City of Houston*, 352 F.3d 162, 183 n. 24 (5th Cir. 2003) *vacated in part by* 2004 U.S. App. LEXIS 10607 (citing *United States. v. Green*, 964 F.2d 365, 371 (5th Cir. 1992)). Based on the foregoing shortcomings alone, summary judgment in favor of AA on its limitations defense and on the applicability of the continuing-violation doctrine is appropriate.

Even considering the facts recited in the factual statement of Ryals's response brief, there is no genuine issue on AA's Title VII limitations defense or her continuing-violation theory. The continuing-violation doctrine is equitable in nature, and should be applied only to ensure that "the filing period [does] not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated." *Glass*, 757 F.2d at 1560-61. Additionally, a court must keep in mind that employers, as well as employees, are entitled to Title VII's procedural protections and must not apply the continuing-violation doctrine in such a way that would negate Title VII's filing requirement. *See Stewart*, 586 F.3d at 328; *Jensen*, 912 F.2d at 522. As one court has explained, a plaintiff whose claim is continuing only because he has knowingly failed to seek relief "can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern." *Sabree v. United Brotherhood of Carpenters*

*and Joiners Local No. 33*, 921 F.2d 396, 402 (1st Cir. 1990). As the United States Court of Appeals for the Fifth Circuit has held, the issue is one of "permanence:" "Does the act have the degree of permanence [that] should trigger an employee's awareness of and duty to assert his or her rights, or [that] should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?" *Berry v. Bd. of Sup'rs of L.S.U*, 715 F.2d 971, 981 (5th Cir. 1983).

In her March 2007 statement made in connection with her complaint with the EEOC, Ryals alleges that Toon had discriminated against her by assigning her to unfavorable tasks, denying her overtime, and recommending disciplinary action against her without cause, (Pl.'s App. Ex. 1A.),[1] the very pattern of conduct she now insists supports her hostile-work-environment claim. One specific incident recounted by Ryals is a March 2005 incident in which Toon assigned Ryals to work overtime to grease an aircraft's wing. (Pl.'s Ex. 1, ¶6.)[2] Toon departed the work site, leaving the grease

---

[1] AA objects to Ryals's letter to the EEOC as hearsay. Ryals responds that the letters are not offered for the truth of the matter asserted, but are instead offered to prove the facts of which AA was aware. But the letter is to the EEOC, not to AA, and Ryals cites the letter in support of her factual assertions regarding the incident. In any event, the Court discusses this evidence only to show that Ryals has failed to specify evidence creating a fact issue on AA's limitations defense and that, even if the Court parses through Ryals's evidence on its own, there is no issue of fact on the defense or her continuing-violation theory. Were Ryals to offer this evidence at trial to prove the facts of her claims, it would be excluded as hearsay; if offered to prove the facts of which AA was aware, it would be excluded as irrelevant.

[2] The Court notes that AA has objected to Ryals's exhibit one, which is a declaration by Ryals, arguing that Ryals did not adequately declare that her statements are true and correct as required by 28 U.S.C. § 1746. Ryals declares

guns locked up. (*Id.*) Thus, Ryals was unable to complete the assignment and, according to Ryals, she was chastised the next morning, but two white, male workers also assigned to grease a wing were not. (*Id.*; Ex. 10-B at AA-1045.)[3]

According to Ryals's EEOC complaint, Toon began assigning her to unfavorable projects, denying her overtime, and unduly recommending disciplinary action in February 2005, and Ryals filed a complaint with AA's human-resources department about this conduct in March 2005. (Pl.'s Ex. 1 at ¶6.) Ryals further claims in the complaint that in January 2006 a co-worker, Terry Buckler, began harassing her. Buckler allegedly made remarks to Ryals such as "I hate you" and, in March 2006, purportedly put his buttocks near Ryals's face and passed gas. (*Id.*) On April 7, 2006, Ryals complained to her supervisor, Tammy Lance, of Buckler's conduct, of Toon's continuing discriminatory conduct, and that she was being ostracized by her co-workers. (*Id.*) Given this evidence both of discrete acts of harassment and Toon's alleged pattern of discrimination occurring prior to May 31, 2006, and particularly the

---

"under penalty of perjury of the laws of the State of Texas" that her "statements of facts and events" are true and correct. Thus, as to her factual statements regarding the March 2005 overtime incident, Ryals has complied with § 1746 and the Court OVERRULES AA's objection. This is not a ruling on any other objection made by AA to Ryals's declaration.

[3] AA has objected to Ryals's exhibit 10-B, which is notes taken by Larry Sharp, an AA human-resources investigator, during an investigation of Ryals's complaint about the March 2005 incident. Ryals responds that AA has not specified which portions of the notes are hearsay and thus its objection should be overruled. Clearly, AA has objected to the notes in their entirety and, as discussed below, the exhibit is inadmissible. But, again, the Court discusses this evidence only to show that even if it parses through the record unguided by assistance from Ryals, there is no fact issue on AA's limitations defense or her continuing-violation theory.

fact that Ryals made two complaints about the discrimination and harassment prior to this date, it is apparent from Ryals's own evidence that she not only perceived the alleged discrimination and harassment, but was aware that she had a right to be free of it. *Cf. Glass*, 757 F.2d at 1560-61 (stating Title VII's limitations period begins when a reasonably prudent employee similarly situated would be aware of the facts giving rise to the claim); *Berry*, 715 F.2d at 981 (limitations period begins when employee should be aware of her rights and the duty to assert them). Hence, the equitable nature of the continuing-violations doctrine prevents the doctrine from being applied to Ryals's case. *Glass*, 757 F.2d at 1560-61 (continuing-violations doctrine applies when, in equity, filing period should not run until employee is, or should be, aware of facts giving rise to claims); *cf. Pegram v. Honeywell, Inc.,* 361 F.3d 272, 279 (5th Cir. 2004) ("[T]he continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts."); *Sabree*, 921 F.2d 396, 402 (1st Cir. 1990) (continuing-violation doctrine applies when employee can only perceive discrimination after living through a series of acts).

Additionally, Ryals has not shown that the events prior to May 31, 2006, are part of a common scheme constituting, along with incidents after this date, an unlawful employment practice. When the events prior to the filing period involve the same manager and

the same type of harassment as events occurring during the filing period, they are "related" for purposes of the continuing-violation doctrine. *Cf. Stewart*, 586 F.3d at 329. Ryals makes broad and generalized claims in her response brief that Toon was the "sine qua non" of the discrimination she suffered at AA, that Toon "repeatedly" assigned her to work alone, and that Toon "went around telling [Ryals's] coworkers, supervisors, and managers that she was an unskilled, unsafe mechanic and that she would report everyone to HR." (Resp. Br. at 3, 7, 25.) But Ryals largely relies on inadmissible evidence to support these broad assertions. She cites to notes taken by an AA human-resources investigator, (Pl.'s Exs. 11C, 11D), and declarations by coworkers Elizabeth Dracon, (Pl.'s Ex. 2A, 2B), and Daniel Cunningham, (Pl.'s Ex. 17). AA has objected to each of these exhibits. And for reasons discussed in more detail below, notes taken during AA's internal investigations and Dracon's declaration are hearsay and, therefore, inadmissible. Cunningham's declaration also includes hearsay and conclusory assertions that do not support Ryals's claims. Other evidence cited by Ryals simply does not support the conclusion that related incidents of harassment occurred both before and after May 31, 2006. (Pl.'s Ex. 12; Pl's Ex. 16 at 56-67 (deponent's testimony of his recollection of Ryals's allegations).) This leaves Ryals to rely on her own declaration and deposition. However, the portions she cites in connection with Toon's actions do not discuss a series of related incidents involving Toon and the same type of harassment occurring both prior

to and after May 31, 2006. (Pl.'s Ex. 1; Resp. Br. at 7 (citing Pl.'s Ex. at 258, 261-62).)

Finally, even granting that Toon was involved in events both prior to and after May 31, 2006, Ryals has alleged discrimination based on gender, race, and national origin. But Ryals's brief takes the approach of merely recounting a number of incidents in which she feels she was treated unfairly, without discussing the type of harassment or discrimination involved in each incident. Ryals's response brief provides no analysis, such as a comparison of how she was treated in pre- and post-filing incidents with how similarly situated white, male, or American-born co-workers were treated, to show that pre- and post-filing incidents involved the same type of harassment or discrimination.

For all of these reasons, Ryals has failed to create a fact issue with respect to the continuing-violations theory, and summary judgment will be entered in AA's favor on Ryals's Title VII claims based on events occurring prior to May 31, 2006.

### b. 42 U.S.C. § 1981

AA also argues that Ryals's claims under § 1981 are time barred. Section 1981 does not include its own statute of limitations. *Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed. Appx. 363, 367 (5th Cir. Feb. 14, 2008). AA asserts that Ryals's § 1981 claims are subject to a four-year limitations period, that Ryals was aware of her claims as early as 1996, and that, therefore, her claims are barred.

The Court will forgo ruling on this argument, however, as even a ruling on this point in AA's favor will avail AA little. Because the Court's review of the briefing and evidence suggests that most of the events of which Ryals complains occurred in 2004 and beyond, the more expeditious route is to address AA's arguments on the merits of Ryals's § 1981 claims.

C.  Merits

    1.  Hostile Work Environment

        a.  § 1981

For Ryals to establish a hostile-work-environment claim under § 1981, she must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her membership in a protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1284 n.7 (5th Cir. 1994) (noting the merits of a § 1981 case are evaluated under the same framework as a Title VII discrimination case).

Again, Ryals's briefing provides no analytical guidance. She asserts, without citation to supporting evidence, that the manner in which she has been treated

    dramatically affects the terms, conditions, and

privileges of employment.  She has been consistently
isolated, placed in unsafe working conditions, ordered to
do impossible tasks and then blamed for not completing
them, removed from assignments because a certain group of
people routinely refuse to work with her, and denied
opportunities for education and advancement.  She also
has been the target of threats, mockery and ridicule.
These adverse working conditions occurred with great
frequency over a long period of time, threatened Ryals'
[sic] physical safety, and have been extremely
humiliating and hurtful.    Both subjectively and
objectively, these conditions are sufficiently severe and
pervasive so as to create a hostile working environment.

(Resp. Br. at 23.)  Ryals offers no legal analysis of whether, even

assuming these assertions are true, they are sufficient to establish

a hostile-working-environment claim.  Again, it is Ryals's duty to

"identify the specific portions of" her summary-evidence "and to

articulate the 'precise manner' in which that evidence" creates a

genuine issue of fact on her claims.  *Forsyth*, 19 F.3d at 1537.

Because she did not do so, she has failed to meet her summary-

judgment burden.

Indeed, even taking these assertions as true, Ryals fails to

address the issue central to a hostile-work-environment claim:  that

she was harassed due to her membership in a protected group.

Nowhere in her discussion of her hostile-work-environment claim does

she even assert that the harassment was due to her gender, race, or

national origin.   The Court has parsed through Ryals's general

factual background statement, which makes only a handful of

assertions appended with a citation to supporting evidence tending

to suggest that Ryals was harassed due to her membership in a

protected class.

For instance, Ryals insists in her factual statement that Toon consistently assigned her to "women's work," causing her to feel demeaned and undervalued and denying her the opportunity afforded to white, male workers to improve her skills.  (Resp. Br. at 9.) In support, Ryals cites to a portion of her deposition in which she testified that she was consistently assigned to jobs related to aircraft lavatories such as cleaning or pulling carpet. (Resp. App. Ex. 13 at 221.)  But no portion of the highlighted testimony suggests that these assignments were a result of Ryals's membership in a protected class.

Ryals then offers the seemingly contradictory point that, when she was not assigned lavatory clean up, she was assigned to projects "all over the aircraft" and, in this way, was denied experience-building opportunities afforded her white, male co-workers. (Resp. Br. at 9.)  In support, Ryals cites to pages 219 through 221 of her exhibit 14 and her exhibit 17.  The Court has been unable to find pages 219 through 221 of exhibit 14.

Exhibit 17 is a declaration by Daniel Cunningham, formerly a mechanic with AA at AFW and now an AA crew chief at Dallas-Fort Worth International Airport.  Cunningham, who was also the mechanics' union representative at the AFW plant, states that Ryals was "clearly [treated] different[ly] from her male counterparts." Cunningham states that he "personally witnessed [Ryals] being treated differently than male mechanics" in that she was assigned to work alone, was assigned to work on various parts of the

aircraft, and was assigned to do work without a work card, which contains instructions on the assigned task and a place for the mechanic to "sign off" on the completion of the task. But Cunningham admits that Ryals "told me she was given work without an associated work card." Thus, Cunningham's attempt to recount Ryals's statement that she worked without a work card is hearsay. And Cunningham does not discuss any specific incident when Ryals allegedly was forced to either work alone or on different parts of the aircraft, nor does he explain how he was in a position to observe how she was treated. *Cf. Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 139 (5th Cir. 1996) ("Needless to say, unsubstantiated assertions are not competent summary judgment evidence.").

Cunningham also claims that he observed Ryals being mocked by her co-workers due to the fact that English was not her native language. In support, Cunningham recounts that, on one occasion, when Ryals asked for assistance with a project, a co-worker told her to go to the tool room and "get a bucket of elbow grease." There is no indication that Cunningham was present at the time of the statement. Furthermore, such an innocuous statement is not evidence of the sort of severe and pervasive harassment based on national origin necessary to support a hostile-work-environment claim. Indeed, the Court is not convinced that the statement has any relation whatsoever to Ryals's national origin or ability to speak English.

Cunningham's other statements are irrelevant. Cunningham states that Ryals was not invited to lunch by her co-workers. Federal anti-discrimination law does not regulate such minutia of interpersonal relationships. Cunningham also states that he observed Ryals upset after the incident with the roto-peen machine, but this is not evidence of harassment based on membership in a protected class.

Ryals, in her factual statement, also cites to declarations by Elizabeth Dracon, another AMT. According to Ryals, Dracon states in her declarations that both she and Ryals are treated differently than male AMTs. AA objects to Dracon's declarations as hearsay because the declarations were made in connection with a proceeding before the EEOC, not in connection with this suit. Ryals contends that the declarations are admissible as admissions under Federal Rule of Evidence 801(d)(2)(D). This rule provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." For a statement to be admissible under Rule 801(d)(2)(D), the proponent of the statement must show that the declarant: (1) was the opponent's agent or servant; (2) the statement was made during the employment relationship; and (3) that the statement concerns a matter within the scope of the employment. *See U.S. v. Saks*, 964 F.2d 1514, 1524 (5th Cir. 1992); *see also Corley v. Burger King Corp.*, 56 F.3d 709,

710 (5th Cir. 1995). "The contents of the statement shall be considered but are not alone sufficient to establish . . . the agency or employment relationship and scope thereof . . . ." Fed. R. Evid. 801(d)(2). Ryals does not point to any evidence independent of Dracon's declarations to show that Dracon was, in fact, an AA employee at the time of her declaration. Furthermore, there is no evidence before the Court to suggest that Ryals's treatment at AA somehow relates to Dracon's duties at AA. *See Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1566 (11th Cir. 1991) (stating that the inquiry, with regard to whether a statement concerns a matter within the scope of employment, is whether the declarant was authorized to act for his principal concerning the matter about which he spoke); *cf. Kelly v. Labouisse*, NO. 3:07CV631TSL-JCS, 2009 U.S. Dist. LEXIS 13287, at *13 (S.D. Miss. Feb. 19, 2009) ("[C]ourts have consistently held [in the context of discrimination claims] that the declarant must be involved in the decision making process affecting the employment action involved (i.e., the declarant must be in management or in the company personnel function) in order for his statements to qualify as having been made within the scope of his employment.") (citations and quotations omitted).

Ryals also argues that Dracon's statements to the EEOC are not "prior testimony" within the meaning of Federal Rule of Evidence 804(a). But Rule 804 deals with exceptions to the hearsay rule, not whether a statement is hearsay in the first instance. Dracon's

25

statement was made in connection with another proceeding, albeit a non-judicial one, and is now being offered in this Court to prove the truth of the matters she asserts.  It is, therefore, hearsay. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). On these grounds, AA's objection to Dracon's declarations are SUSTAINED.

Finally, Ryals recounts that, on one occasion, Toon assigned two white males to lube the wing of an aircraft while assigning Ryals alone to lube the other wing.  (Resp. Br. at 5.)  When Ryals and the two men attempted to get grease guns to do the job, they found the guns were locked up and no key was available.  As this was an overtime assignment, Toon had already left, so Ryals reported the situation to the crew chief then on duty, who assigned Ryals and the two men to other tasks.  The next day, Ryals claims that she was chastised for not completing the lube job, while the two white men were not.

Ryals cites three portions of her appendix as evidence of this incident: (1) her March 2005 letter to the EEOC (Pl.'s Ex. 1B); (2) documents that are purportedly notes taken by an AA human-resources investigator during an investigation of Ryals's claims (Pl.'s Ex. 10B), and (3) portions of her deposition.  AA has objected to the March 2005 letter and the investigation notes as hearsay.  Both are statements made separate from this case now offered to prove the

truth of the matters asserted in them. Ryals's only response is that AA has not specified which portions of these documents are hearsay. Even assuming that some portion of the investigator's notes might be admissible as admissions by an agent in the scope of employment under Rule 801(d)(2)(D), the factual contentions recorded in the notes were apparently related by other employees, as well as Ryals herself, causing the bulk of the notes to be double hearsay.[4] Ryals does not address this. Hence, the Court concludes that exhibits 1B and 10B are hearsay in their entirety, and AA's objection is SUSTAINED. And the cited portions of Ryals's deposition simply do not relate to the incident discussed in her brief.

Other incidents related by Ryals have no tendency to show harassment based on her membership in a protected class. For instance, Ryals states that Toon and another man, Gary Dant, refused to work with her. (Resp. Br. at 7.) But Ryals offers nothing to suggest that it was because of her membership in a protected class. Rather, the evidence suggests that these men simply did not like working with her. This does not support a hostile-work-environment claim, which requires that Ryals show harassment due to her membership in a protected class. *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). With the foregoing, Ryals has offered no more than a scintilla of evidence to show that she has been harassed

---

[4] For this same reason, AA's hearsay objection to Ryals's exhibits 11C and 11D are SUSTAINED.

at AA due to her race, national origin, or gender, and summary judgment will be entered in favor of AA accordingly.

Additionally, even after independently reviewing Ryals's evidence, the Court concludes that she also has failed to create a fact issue on whether the alleged harassment affected a term or condition of her employment. "For harassment . . . to affect a term, condition, or privilege of employment . . . it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *See Ramsey*, 286 F.3d at 268. In determining whether a work environment is abusive or hostile, all of the circumstances of the plaintiff's employment are considered, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys*., 510 U.S. 17, 23 (1993). The conduct at issue must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepard v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999). "To survive summary judgment, the harassment must be so severe and pervasive that it destroys a protected class member's opportunity to succeed in the work place." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004).

Ryals has offered no more than a scintilla of evidence on the

frequency and severity of the alleged harassment. Again, she relies on evidence such as Cunningham's declaration and Dracon's statements to the EEOC. Cunningham, in his declaration, states that Ryals was "mostly" assigned to work alone. Dracon states that Ryals is "often" assigned to work alone and that, while the situation at AA is bad for Dracon because of her gender, things are even worse for Ryals because she is a woman and black. Ryals testified that the harassment and discrimination against her at AA began in 1996. Vagaries such as "mostly" and "often" give the Court no guidance on the true frequency and pervasiveness of the harassment over Ryals's fourteen years of employment at AA.

Beyond this, Ryals's brief discusses no more than a handful of specific incidents of harassment over the course of her fourteen years with AA, including the six years since Toon became Ryals's crew chief. Upon review of Ryals's brief, the Court can enumerate only two specific incidents in which Ryals has directed the Court to admissible evidence: (1) Ryals was assigned to use the roto-peen machine alone and was injured when her hair became caught in it, and (2) Toon assigned Ryals and two white men to grease the wings of the plane and, when they were unable to perform the job because the grease guns were locked up, only Ryals was chastised. Ryals points to other incidents, such as another crew chief's assigning her to a task in a dark area of a plane alone, and forcing her to hold a flashlight between her knees to perform the task. Ryals cites her statement to the EEOC and Dracon's declarations as evidence of this

incident.  Both of these items are inadmissible.  Again, Ryals makes generalized statements, such as that Toon spread the rumor that she was unskilled, unsafe, and quick to complain to human resources. As discussed above, Ryals does not support these broad assertions by discussing specific incidents or with admissible evidence.

As for the severity of the alleged harassment and whether it was physically threatening, in one section of her brief, Ryals claims that she was "subjected to threats, ridicule, and intimidation." (Resp. Br. at 9.)  Having reviewed the evidence cited in this section, the Court concludes it offers no support for this assertion.  Ryals cites Cunningham's declaration, in which he recounts the ambiguous and seemingly non-threatening incident where a co-worker told Ryals to get a bucket of elbow grease.  The only other evidence of a threatening statement cited by Ryals is a statement by her supervisor, Richard Buell, that Ryals did not want to work with certain people because they were going to hurt her. (Pl.'s Ex. 13 at 97-98.)  This is not a threat by Buell that he was going to hurt Ryals, but is instead a statement by him of his understanding of why Ryals did not want to work with certain people; those people were, according to Ryals, creating a hostile work environment in which she feared she would be hurt.  (*Id.*)  And it was AA, rather than Ryals, that highlighted three incidents in which Ryals was injured that Ryals might use to suggest that her work environment was physically threatening.  One was the roto-peen incident.  On another occasion, a co-worker opened a hatch door as

Ryals walked by, cutting her knee.  Ryals suffered a third injury when, while working under an aircraft seat, a coworker stepped on her leg.  As set out in AA's brief, Ryals reported each of these as accidents and she does not now contend that they were intentional assaults based on her membership in a protected class.

Finally, Ryals has not shown that her performance of her duties has been affected or that the alleged harassment has destroyed her ability to succeed in the workplace.  Ryals points out only two specific incidents in her brief: (1) the wing-greasing assignment that she was unable to perform because the grease guns were locked up, and (2) the assignment in the dark portion of the plane when she had to hold a flashlight with her knees.  Ryals asserts that because she has been ostracized she has been denied the benefit of working with experienced mechanics, but she has not elaborated on this point to show that it has hindered her performance of her work.

Ryals contends that she was denied advancement and related educational opportunities, and these allegations might suggest, by implication, that her performance was affected.  Having reviewed her factual statement, Ryals refers to four incidents that arguably fall within this complaint: (1) in 2003 Ryals claims that she was given a position in AA's avionics department but, based on Toon's insistence, the position was canceled; (2) in January 2004, Ryals signed up for a class, apparently offered by a school rather than AA, but, again based on Toon's insistence, she was told she could not alter her schedule to attend the class; and (3) Toon and

Boutwell have refused to allow Ryals to participate in a "labor loan" program, in which general AMTs perform work in the avionics department in order to become qualified to work in that department full time.

As for the 2003 cancellation of the avionics position and the refusal in January 2004 to allow Ryals to alter her schedule to attend class, Ryals offers no admissible evidence. Her evidence of of these events consists of her March 2005 letter to the EEOC (Pl.'s Ex. 1B), notes from an AA human resources investigation (Pl.'s Ex. 11D), and her own deposition. The letter and the notes are hearsay and have been excluded as such. In her deposition, Ryals states that when the avionics position was canceled and she asked for an explanation, "they were telling me Mr. Toon don't want you to be in avionics." (Pl.'s Ex. 13 at 60-61.) Ryals's testimony about what "they" said is hearsay, and the Court will not consider it. And as for her ability to participate in the labor-loan program, AA has produced evidence that one must be qualified through testing to participate in the program. Ryals's only response is to claim that she knew of one employee, apparently over the course of her fourteen years of employment with AA, who was allowed to participate in the program without passing the test. Ryals's only description of this man is that his first name is "Cain." AA's records reveal no avionics employee by this name. Ryals thus has not shown that her performance of her duties was affected by harassment.

More broadly, Ryals has not shown that there are fact issues

as to whether severe and pervasive harassment destroyed her ability to succeed in the workplace.  Thus, summary judgment will be granted in AA's favor on this claim.  *See Hockman*, 407 F.3d at 326.

b.  Title VII

Having concluded that Ryals has not created a fact issue on the applicability of the continuing-violation doctrine and, therefore, her claims under Title VII based on incidents prior to May 31, 2006, are time barred, it remains to be determined whether the evidence cited by Ryals of events that occurred during the 300-day period creates an issue of fact on her Title VII hostile-work-environment claim.  As just discussed with regard to Ryals's hostile-work-environment claim under § 1981, Ryals failed to specify evidence in support of this claim and, even upon independent review of her evidence, it is insufficient to survive summary judgment.  If Ryals's evidence on the totality of the alleged harassment does not support a hostile-work-environment claim, her evidence of events in the 300-day filing period does not support such a claim.

Indeed, Ryals's brief highlights only one incident that occurred during the filing period.  In August 2007 Gary Henson purportedly assigned Ryals to do work in a dark area of a plane alone, resulting in Ryals's holding a flashlight between her knees to complete the task.  Ryals's evidence of this incident has been excluded.

2.  Disparate Treatment

Ryals also alleged claims of disparate treatment under Title

33

VII and § 1981 in her complaint.  AA moved for summary judgment on these claims, arguing that Ryals did not have evidence to support them.  This placed on Ryals the burden of going beyond her pleadings and coming forward with evidence in support of these claims in order to survive summary judgment.  *See Arbaugh v. Y&H Corp.*, 380 F.3d at 222; *see also* FED. R. CIV. P. 56(e).  She did not do so.  Indeed, her brief does not even mention her disparate-treatment claims.  The closest she comes to addressing these claims is her statement, in the summary section of her brief, that AA has no legitimate business reason to justify the manner in which she has been treated.  (Resp. Br. at 1.)  In a disparate-treatment case, an employer must offer a legitimate, non-discriminatory reason for the alleged discriminatory acts only after the employee has produced evidence showing a prima-facie case of discrimination.  *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004).  Ryals does not attempt to make out a prima-facie case of discrimination in her brief and, aside from the passing reference to AA's lack of a legitimate business reason for its actions, her brief does not even use terminology associated with a disparate-treatment claim.  Consequently, Ryals has failed to meet her summary-judgment burden and, by not addressing them at all, has waived these claims.  *See Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) ("A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence.") (citing *Solo Serve Corp. v. Westowne Assocs.*,

34

929 F.2d 160, 165 (5th Cir. 1991)); *see also Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 (S.D. Tex. 2003) (concluding failure to brief an argument before the district court waives that argument as analogue to decisions by the Fifth Circuit that such failure waives the argument on appeal) (citing *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002)).

　　　3.　Retaliation

　　　Ryals may also recover under Title VII or § 1981 if AA retaliated against her for engaging in a protected activity. Specifically, to establish a prima-facie case of retaliation, Ryals must show that: (1) she participated in a Title VII protected activity; (2) she suffered an adverse employment action by her employer; and (3) there is a causal connection between the protected activity and the adverse action. *Stewart*, 586 F.3d at 331; *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002) (noting retaliation claim under § 1981 is considered under same framework as Title VII retaliation claim).

　　　After reciting these elements, Ryals states simply that "many of Ryals'[s] coworkers refused to work with her because she reported harassment to HR." Ryals does not identify any evidence that she engaged in a protected activity. Nor does she specify any evidence of a materially adverse employment action. Although a retaliation claim need not be based on an "ultimate" employment decision, as with a disparate-treatment claim, to recover for retaliation the plaintiff must show that he suffered a "materially adverse"

employment action.  *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).  An action is materially adverse if the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68 (quoting *Rochon v. Gonzalez*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  Whether an employment action is materially adverse must be determined in light of all of the circumstances.  *See id.* at 69.  Ryals has not marshaled her evidence to explain how the circumstance of any employment action to which she was subjected was materially adverse.

Finally, it was Ryals's burden to respond to AA's summary-judgment motion with some evidence that the alleged acts of retaliation were caused by her participation in a protected activity and explain how such evidence supported her claim.  Whether a protected activity is the cause of a retaliatory action by an employer is a "highly fact specific" question, and a court is to consider a number of factors, such as (1) the employee's disciplinary record, which may help to explain the employment action; (2) whether the employer followed its typical practice or procedure in undertaking the employment action, and (3) the temporal proximity between the employee's participation in the protected activity and the materially adverse employment action. *See Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994).  Again, Ryals has not specified any particular employment action about which she complains, nor any specific protected activity in which she

allegedly engaged.  Worse still, she has not attempted to explain the causal relationship between any such activities.  This Court will not choose at random an employment practice complained of by Ryals and a protected activity in which Ryals claims to have engaged and perform the fact-intensive inquiry without any assistance from her.  Establishing a genuine issue of fact on the causal-relationship issue, as well as the other elements of her retaliation claim, was Ryals's burden, and she has failed to carry it.

Nevertheless, summary judgment on these claims in favor of AA is again appropriate even if the Court independently reviews Ryals's factual statement and cited evidence.  Ryals claims that, after Toon was informed that she made her March 2005 report to human resources, he said that "the shit will hit the fan."  Her only evidence of this--her March 2005 letter to the EEOC--has been excluded as hearsay.  Ryals claims that others, including her supervisor Tammy Lance ("Lance") expressed anger at her complaints.  But Ryals does not point to evidence that Lance took any retaliatory action against her.  Ryals insists that Toon and others told her coworkers that Ryals "always" went to human resources.  Ryals's only evidence of this statement--Dracon's declarations--also has been excluded.  In any event, Ryals does not explain how such a statement amounts to a materially adverse employment action.

III.  Conclusion

Ryals failed, in responding to AA's motion for summary

judgment, to specify evidence in the record and to articulate how that evidence supported her claims. For this reason, summary judgment is GRANTED in favor of AA as set out above. Moreover, the Court went beyond its duties, looking not only to the evidence specified and analyzed by Ryals as supporting her claims, but looking to the evidence cited by Ryals in support of her general factual background statement. Even with this, Ryals has not offered proof sufficient proof to create a genuine issue of material fact on the issues discussed in this order. For this additional reason, summary judgment is GRANTED in favor of AA as set out above. AA's motion to STRIKE is GRANTED as discussed in this order and, in all aspects not discussed, is DENIED as MOOT. Ryals's motion to strike is DENIED as MOOT.

SIGNED September 13, 2010.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE